UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
JOSEPH URBINA,

                          Plaintiff,

               -against-

THE CITY OF NEW YORK, NYC PARKS
ENFORCEMENT PATROL CAPTAIN
DOMINGO SANCHEZ, and NYC PARKS
ENFORCEMENT PATROL SERGEANT
STANKO,

                          Defendants.
-------------------------------------------------------X

**18 CV 550**

**COMPLAINT**

Plaintiff **JOSEPH URBINA,** by his attorney, Joel Berger, Esq., for his complaint alleges, upon information and belief, as follows:

### NATURE OF THE ACTION

1.     This is an action to recover money damages arising out of the violation of plaintiff's rights under the Constitution and laws of the United States and the State of New York, including false arrest, false imprisonment and malicious prosecution, by employees of the New York City Parks Enforcement Patrol ("PEP").   Plaintiff was arrested and handcuffed by defendant PEP Captain Domingo Sanchez, who also brutalized him in the course of the arrest, inflicting injuries including two broken ribs.  Plaintiff was then transported to a police precinct where he was imprisoned for several hours.  He was then handed three summonses and released.  No officer filed any accusatory instrument with the court in support of the summonses, and accordingly they were dismissed.

### JURISDICTION AND VENUE

2.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States.

3.     The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331 and 1343.

4.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b) (2), in that all of the events giving rise to the claims occurred within this District.

### PENDENT JURISDICTION

5.     This Court also has jurisdiction over plaintiff's state law claims, pursuant to its pendent or supplemental jurisdiction as codified in 28 U.S.C. § 1367.

6.     On July 11, 2017, within ninety days after plaintiff's arrest of plaintiff, plaintiff served by hand a verified Notice of Claim upon the Comptroller of the City of New York.

7.     The Comptroller's Bureau of Law and Adjustment acknowledged receipt of the Notice and assigned the claim number 2017PI019633.

8.     On November 29, 2017, plaintiff submitted to hearing pursuant to General Municipal Law Sec. 50-H

9.     At least thirty days have elapsed since the service of the Notice of Claim and adjustment or payment of the claim has been neglected or refused by defendant City of New York.

10.     This action is being commenced within one year and ninety days after the happening of the events upon which the claims are based.

### JURY DEMAND

11.     Plaintiff demands trial by jury in this action.

### PARTIES

12.     Plaintiff **JOSEPH URBINA** is a citizen of the United States and a resident of New York State and Queens County.

13.     Until recently Mr. Urbina had operated a food cart adjacent to City Hall Park for approximately 4½ years.  His last cart at that location sold yogurt.

2

14.     Mr. Urbina is 53 years old (he will be 54 in February 2018).  He is married and has four daughters.  He is a disabled United States Army veteran, with a chronic back condition, who served overseas and participated in dangerous missions.

15.     Plaintiff has never been convicted of any offense, and has never been arrested except for the incident of this lawsuit.

16.     Defendant City of New York is a municipal corporation organized under the laws of the State of New York.

17.     Defendant City of New York operates the New York City Department of Parks and Recreation, a department or agency of defendant City of New York responsible for the appointment, training, supervision, promotion and discipline of Parks Enforcement Patrol ("PEP") law enforcement officers and supervisory officers, including the individually named defendants herein.

18.     At all times relevant herein, defendant Domingo Sanchez was a PEP Captain.

19.     At all times relevant herein, defendant Stanko (female) was a PEP Sergeant.

20.     At all times relevant herein, defendants Sanchez and Stanko were acting as agents, servants and employees of defendant City of New York and the NYPD.

21.     At all times relevant herein, all defendants were all acting under color of state law.

### *FACTS*

22.     On Saturday, April 15, 2017, at approximately 10:30 A.M., plaintiff arrived at the location adjacent to City Hall Park, just south of Chambers Street and across from the Brooklyn Bridge ramp, where he has operated a food cart for approximately 4½ years.

23.     There was a Nathan's food cart in the spot that plaintiff at which plaintiff has

always operated his cart.

24.     Plaintiff asked the operator of the Nathan's cart to leave, noting that as a Veteran he had priority under a permit issued by the City.

25.     When the operator of the Nathan's cart refused to vacate plaintiff's spot, plaintiff called the Parks Department, the agency responsible for City Hall Park, and asked to have an officer dispatched to his location.

26.     A man in plain clothes, Domingo Sanchez, came to the location.

27.     Sanchez did not identify himself as a Parks Department employee and did not display a shield or any other form of identification.

28     Instead of assisting plaintiff, Sanchez started yelling belligerently at plaintiff and haranguing plaintiff, arguing that "you don't own anything in the park," or words to that effect.

29.     As Sanchez was arguing with plaintiff, Sanchez suddenly and without any cause or provocation struck plaintiff in the chest area with Sanchez's right hand and elbow.

30.     Three witnesses at the location observed Sanchez initiating the physical contact, hitting plaintiff so hard that plaintiff reeled backward began losing his balance.

31.     Sanchez then tackled plaintiff to the ground and pressed his right knee onto plaintiff's left ribs, using all his weight in an effort to disable plaintiff from defending himself.

32.     While on the ground Sanchez pulled out a radio and yelled "officer down," and shortly thereafter police officers arrived.

33.     The police officers recognized plaintiff as a regular vendor of the location, and chose not to become involved in the incident.

34.  The police officers assisted Sanchez only to the extent of placing Sanchez's handcuffs on plaintiff, and then left the scene.

35.  Two uniformed PEP officers then arrived in a Parks Department vehicle, defendant Sergeant Stanko and a young male officer.

36.  Sanchez ordered the two uniformed PEP officers to put plaintiff in their vehicle.

37.  Plaintiff was then driven to the 1st Police Precinct, 16 Ericsson Place, and put in a cell at the Precinct.

38.  Sanchez later appeared at the 1st precinct, mouthing irate insults at plaintiff, making belligerent comments such as "you know what happens in war" or words to that effect, and threatening to have plaintiff taken to Central Booking.

39.  Ultimately Sanchez ordered Sgt. Stanko to issue summonses to plaintiff.

40.  Sgt. Stanko had not been present during the incident at City Hall Park, but Sanchez told her what to write.

41.  Plaintiff was issued three summonses, one for "disorderly behavior" and operating a motor vehicle in a manner that "endangers safety" under Parks Rules and Regulations (PR&R) Sec. 1-04 (l) (9), a misdemeanor; one for "failure to comply with directive of officer" under PR&R Sec. 1-03 (c) (1) (1), also a misdemeanor; and one for disorderly conduct, Penal Law 240.20 (1). All three summonses required plaintiff to appear in a summons part of the Criminal Court at 1 Centre Street, 16th floor (Part AR2c at 9:30 A.M. on June 26, 2017.

42.  After the summonses were handed to plaintiff he was released from imprisonment. Altogether he had been imprisoned for approximately 3 hours.

43.   When plaintiff appeared in Criminal Court on June 26. 2017, he was advised by the Clerk's office that no one from the Parks Department had followed through on the summonses by issuing accusatory instruments, and that he therefore did not have to return to court.

44.   On November 16, 2017, plaintiff again went to the Criminal Court at 1 Centre Street, ascertained that no one from the Parks Department had ever issued any accusatory instruments on the summonses, and was provided with documentation to that effect.

45.   When plaintiff was released from the 1st precinct on the date of the arrest he felt shortness of breath

46.   After returning to his home in Forest Hills plaintiff continued to feel ill, and went with his wife to a local and City MD Urgent Care facility.

47.   The City MD Urgent Care Facility records reflect that plaintiff was examined and advised that he must "go to ER [Emergency Room] immediately."

48.   Plaintiff's wife drove him to a Veterans Hospital in Manhattan, the New York Harbor Healthcare System facility at 423 East 23rd Street, where X-rays were taken.   The Radiology report reflects that plaintiff's sixth and seven left ribs, where Sanchez had placed his right knee and pushed down with all his weight, were fractured.

49.   Plaintiff continued to experience excruciating pain in his ribs for several months until the fractures eventually healed.

50.   Plaintiff was in too much pain to operate his yogurt cart and had to pay another individual to operate it until September 2017, after which he felt that he could no longer continue to maintain the business, and sold the cart.

51.   Plaintiff continues to experience pain in his left ribs to this day and has been advised by his VA doctor to avoid lifting anything heavy.

52.   Plaintiff also suffers from Post Traumatic Stress Disorder (PTSD) as a result of incidents he experienced during his Army service.

53.   The events described in this Complaint severely exacerbated plaintiff's PTSD, and he has been under the care of a mental health provider the VA Hospital.

54.   Plaintiff has a video of Sanchez kneeing him in the left ribs, but has been advised by his VA mental health provider not to view at it anymore because of its impact upon his PTSD.

55.   Two days after the incident NYC Health Inspectors revoked the license of the Nathan's cart that Sanchez had sided with, also determining that it was supposed to be stationed on 59th Street and that the operator who had tried to take plaintiff's spot was not licensed to operate the cart.

### FIRST CLAIM FOR RELIEF

56.   Plaintiff repeats and realleges the allegations contained in ¶¶ 1-55.

57.   Defendants, by their conduct toward plaintiff alleged herein, violated plaintiff's rights guaranteed by 42 U.S.C. § 1983, the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, and Article I, §§ 1, 5, 6, 11 and 12 of the Constitution of the State of New York.

### SECOND CLAIM FOR RELIEF

58.   Plaintiff repeats and realleges the allegations contained in ¶¶ 1-55 and 57.

59.   The acts complained of herein are a direct and proximate result of the failure of the

City of New York and the NYC Department of Parks and Recreation properly to select, train, supervise, promote and discipline PEP officers and supervisory POEP officers.

60.     The failure of the City of New York and the NYC Department of Parks and Recreation properly to select, train, supervise, promote and discipline PEP officers and supervisory PEP officers constitutes gross and deliberate indifference to unconstitutional conduct by those officers.

61.     The official policies, practices and customs of the City of New York and the NYC Department of Parks and Recreation, alleged in ¶¶ 1-45, 47 and 49-50 violated plaintiff's rights guaranteed by 42 USC § 1983, the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, and Article I, §§ 1, 5, 6, 11 and 12 of the Constitution of the State of New York.

### THIRD CLAIM FOR RELIEF

62.     Plaintiff repeats and realleges the allegations contained in ¶¶ 1-55, 57, and 59-61.

63.     The conduct toward plaintiff alleged herein constituted false arrest, false imprisonment, malicious prosecution, assault, battery and employee negligence.

64.     The conduct toward plaintiff alleged herein subjected plaintiff to trauma, shock, debasement, shame, fright, fear, humiliation, embarrassment, loss of freedom, harassment, and physical, psychological and emotional injury, trauma, pain, and suffering, and loss of income.

### FOURTH CLAIM FOR RELIEF

65.     Plaintiff repeats and realleges the allegations contained in ¶¶ 1-55, 57, 59-61, and 63-64.

66.    At all times relevant herein, the individual defendants were on duty and were acting within the scope of their employment as agents, servants and employees of the City of New York, which is therefore responsible for their conduct under common law, state law and Article I, §§ 1, 5, 6, 11 and 12 of the Constitution of the State of New York.

## *PRAYER FOR RELIEF*

**WHEREFORE**, Plaintiff respectfully requests judgment against defendants as follows:

(a)    Compensatory damages against all defendants, jointly and severally;

(b)    Punitive damages against all individual defendants, jointly and severally;

(c)    Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

(d)    Such other and further relief as this Court deems just and proper.

Dated:    New York, New York
January 22, 2018

/s/ Joel Berger
**JOEL BERGER**
360 Lexington Avenue, 16th Fl.
New York, New York 10017
(212) 687-1425

**ATTORNEY FOR PLAINTIFF**